IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PAUL E. CRAWLEY, JR., | CASE NO. 1:24-cv-1760 |
| Plaintiff, | DISTRICT JUDGE BRIDGET MEEHAN BRENNAN |
| vs. | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | **REPORT & RECOMMENDATION** |

Plaintiff Paul E. Crawley, Jr., filed a Complaint against the Commissioner of Social Security seeking judicial review of a decision denying his application for disability insurance and social security income benefits. Doc. 1. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court affirm the Commissioner's decision.

**Procedural Background**

*Previous application.* In July 2016, Crawley filed an application for disability insurance benefits alleging a disability onset date in September

2015.[1] Tr. 88. His application was denied initially and on reconsideration. *Id.* In May 2017, Crawley requested a hearing before an administrative law judge (ALJ). *Id.* In June 2018, ALJ Traci Hixson held a hearing. *Id.* In November 2018, ALJ Hixson issued a decision denying Crawley's application. Tr. 85–108. In December 2019, the Appeals Council affirmed the ALJ's November 2018 decision. Tr. 109–114. Because Crawley did not further appeal, the ALJ's November 2018 decision became the final decision of the Commissioner as to his July 2016 application.

*Current application.* In March 2020, Crawley filed applications for disability insurance and supplemental security income benefits alleging a disability beginning in September 2015. Tr. 218–228. In pertinent part, Crawley alleged that he was disabled and limited in his ability work, due to: back issues, kidney problems, gout, knee issues, arthritis, diabetes, and neck problems. Tr. 252. The Commissioner denied Crawley's application initially and on reconsideration. *See* Tr. 159, 170.

In January 2021, Crawley requested a hearing. Tr. 177. In October 2021, ALJ Catherine Ma held a telephonic hearing. Tr. 47. Crawley appeared, testified, and was represented by counsel at the hearing. Tr. 47. Qualified vocational expect Brett Salkin also testified. Tr. 74. In December 2021, ALJ

---

[1]     "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

2

Ma issued a written decision, in which she found that Crawley was not entitled to benefits. Tr. 12–36.

In January 2022, Crawley appealed the ALJ's decision to the Appeals Council. Tr. 215. In February 2023, the Appeals Council denied Crawley's appeal. Tr. 1. In April 2023, Crawley filed a Complaint against the Commissioner, docketed as case no. 1:23-cv-799, challenging the ALJ's decision. In September 2023, this Court remanded, based on the parties' stipulation, for "further administrative proceedings pursuant to Sentence Four of Section 205 of the Social Security Act, 42 U.S.C. § 405(g)." Tr. 1098. In December 2023, the Appeals Council issued an Order vacating ALJ Ma's December 2021 decision, finding that "the hearing decision does not contain an adequate evaluation of the medical source opinions from Jonathan Belding, M.D., and Joseph Konieczny, Ph.D." *See* Tr. 1101 The Appeals Council also directed the ALJ to consider the following on remand:

> • Give further consideration to the medical source opinion(s) and prior administrative medical findings pursuant to the provisions of 20 CFR 404.1520c and 416.920c. As appropriate, the Administrative Law Judge may request the medical sources provide additional evidence and/or further clarification of the opinions (20 CFR 404.1520b and 416.920b). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's medical sources.
>
> • Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific

references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling 85-16 and 96-8p).

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

Tr. 1102.

In April 2024, ALJ Ma held a telephonic hearing. Tr. 1035–1066. During the hearing, Crawley's counsel amended Crawley's alleged onset date to November 10, 2018. Tr. 17. In July 2024, the ALJ issued a partially favorable decision, Tr. 999–1023, which Crawley now appeals.

Crawley timely filed this action in October 2024. Doc. 1. In it, he asserts three issues:

1. The ALJ erred when she applied the wrong standard of review when she adopted the

4

residual functional capacity (RFC)[2] of the prior Administrative Law Judge.

2.    The ALJ erroneously failed to comply with the Order of Remand when she improperly assessed the opinions of the treating and examining sources.

3.    The ALJ's finding that Plaintiff could perform work at the light level of exertion and did not require the use of a cane for balance was not supported by substantial evidence and was contrary to Social Security Ruling 96-9p.

Doc. 7, at 1.

**Evidence**[3]

*Personal, Educational, and Vocational Evidence*

Crawley was born in March 1969, making him 46 on the original alleged onset date in 2015 and 49 on the amended alleged onset date in 2018. Tr. 248. Crawley graduated from high school and completed a "computerized machinery program." Tr. 253.

*Medical Evidence*

In June 2018, Dr. Cherrica Davis, of Lake Health Physician Group, noted Crawley's sciatic nerve pain, which had caused him to twice visit an emergency room in the interim since his last visit to the practice. Tr. 431.

---

[2]    An RFC is an "assessment of" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Circ. 2002). Essentially, it is the Social Security Administration's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

[3]    The recitation of evidence is not intended to be exhaustive and is generally limited to the evidence cited in the parties' briefs.

In September 2019, Crawley visited the emergency room due to chest pain, diabetes, and chronic lower back pain Tr. 320–325.

In an October 2019 follow-up appointment, Dr. Davis treated Crawley for shortness of breath. Tr. 425-427.

In February 2020, Dr. Jonathan E. Belding, M.D., saw Crawley for a follow-up appointment as to a laminectomy and fusion that Dr. Belding performed in October 2018. Tr. 472. Dr. Belding noted that "[t]hings [were] improving" since Crawley's back surgery and that he was working on physical therapy and had lost weight, but that he still had tingling in his right leg. *Id.*

In June 2021, Dr. Belding completed a two-year follow-up appointment related to Crawley's laminectomy. Tr. 959. Dr. Belding noted that Crawley "feels like his back pain is better but he still has trouble with long distance walking." *Id.* Dr. Belding continued to encourage weight loss and recommended an injection in Crawley's lumbar spine to see whether decreasing inflammation would help with his claudicatory[4] symptoms. *Id.*

Also in June 2021, Patrick Convery, M.D., identified pain and osteoarthritis in both of Crawley's knees. Tr. 1399. Dr. Convery instructed Crawley on activities to improve his strength and pain and advised him on

---

[4]     Claudication is pain in the legs or arms caused by lack of oxygen which generally occurs while walking or using arms. It is typically a symptom of artery disease due to a buildup of plaque in artery walls. *Claudication*, Mayo Clinic,                          https://www.mayoclinic.org/diseases-conditions/claudication/symptoms-causes/syc-20370952 **[https://perma.cc/YHE8-3K3L]**.

appropriate use of Tylenol for pain. *Id.* Dr. Convery also administered Cortisone injections in each of Crawley's knees. *Id.*

In November 2021, Crawley was admitted to a hospital for observation based on reported shortness of breath. Tr. 1459. He received a primary diagnosis of "COVID-19." Tr. 1459.

Also in November 2021, Brenda Beck, D.O., administered "[b]ilateral L3 and L4 medial branch nerve blocks and bilateral L5 posterior rami nerve blocks under fluoroscopic guidance." Tr. 1762.[5]

In October 2022, Dr. Beck again administered nerve block injections. Tr. 1748.

In November 2022, Dr. Beck performed a "[r]ight sided L3, L4, and L5 medial branch nerves nerve radiofrequency ablation under fluoroscopic guidance." Tr. 1744.

In December 2022, Dr. Beck again performed a radiofrequency ablation on Crawley's lumbar spinal region. Tr. 1736.

---

[5]     Vertebrae in a person's spine are given letter and number designations according to their location. The neck—the cervical spine—has seven vertebrae designated as C1 through C7. *See* Thomas Scioscia, MD, Vertebrae in the Vertebral Column, Spine-health Resources, https://www.spine-health.com/conditions/spine-anatomy/vertebrae-vertebral-column [https://perma.cc/R9MM-TBZT]. The twelve vertebrae compromising the upper spine—the thoracic spine—are labeled at T1 through T12. *Id.* The five vertebrae in the lower spine—the lumbar spine—are L1 through L5. *Id.* The five vertebrae at the bottom of the spine—in the sacrum—are labeled as S1 through S5. Thomas Scioscia, MD, Sacrum (Sacral Region), Spine-health Resources, https://www.spine-health.com/conditions/spine-anatomy/sacrum-sacral-region [https://perma.cc/S2BR-RBTB].

In January 2023, Dr. Beck, examined Crawley for generalized pain. Tr. 1716. She noted Crawley's history of hypertension, diabetes, depression, obstructive sleep apnea, laminectomy, and low back pain. *Id.* Dr. Beck noted that when she spoke to Crawley earlier that month, "he was very pleased after his results of his lumbar [radiofrequency ablation]," and he "[h]as been doing some more walking, felt good, but flared pain." *Id*. Dr. Beck also noted some stiffness, tingling, and radiating pain in both legs. *Id.* She described Crawley's past medical history and noted that they discussed a treatment plan to include physical activity, medication, and interventional treatment including continued lumbar medial branch nerve ablations, as needed. *Id*.

On August 2023, Anthony Esparaz, M.D., interpreted x-ray images of Crawley's knees and remarked that the images demonstrated severe osteoarthritic degenerative changes in both knees. Tr. 2917.

In November 2023, Crawley presented to the emergency room for lightheadedness and generalized weakness, which was caused by low blood sugar resulting from intermittent fasting. Tr. 1330–35.

In February 2024, Christine Dearth, APRN-CNP,[6] provided continuing treatment for Crawley's "poorly controlled" Type 2 diabetes. Tr. 1295. Nurse Dearth noted that Crawley's blood sugar levels would elevate whenever he

---

[6]     APRN is an abbreviation for Advanced Practice Registered Nurse. *Advanced Practice Registered Nurse (APRN)*, OhioAPRN.com, http://www.ohioaprn.com/what-is-an-aprn-.html [https://perma.cc/69UR-XX65]. CNP is an abbreviation for Certified Nurse Practitioner. *Id*.

received steroid injections in his knee and back, *id.*, and that his diabetes was "complicated by hypertension, nephropathy, and peripheral neuropathy." Tr. 1300.

In April 2024, Crawley presented to the emergency department with facial drop, nausea, vomiting, and loss of consciousness. Tr. 2541–42. After diagnostic testing, doctors determined that he had an acute ischemic stroke. Tr. 2542. Crawley was treated with medication and his initial symptoms resolved during inpatient care. Tr. 2542, 2555. Crawley has since participated in outpatient physical and occupation therapy for stroke rehabilitation. Tr. 2554, 2624.

*State Agency Consultants*

In June 2020, state agency medical consultant Abraham Mikalov, M.D., reviewed Crawley's medical records from 2018 through 2020. Tr. 125–26. Dr. Mikalov concluded that Crawley could perform a limited range of light exertional level work. Tr. 129. Specifically, Dr. Mikalov determined that in an eight-hour workday, Crawley could sit for six hours and stand or walk for four hours. *Id.* Dr. Mikalov also noted that Crawley could occasionally reach overhead but had the ability to reach in front as well as the ability to handle, finger, and feel. *Id.* He also found that Crawley could frequently balance; occasionally stoop, kneel, crouch, crawl; occasionally climb ramps or stairs; and never climb ladders, ropes, or scaffolds. *Id.* Finally, Dr. Mikalov noted that Crawley must avoid all exposure to unprotected heights and commercial

9

driving. *Id.* Dr. Mikalov explained that after consideration of the applicable record evidence between November 2018 through the present, he determined that it was appropriate to adopt the prior RFC under Social Security Acquiescence Ruling 98–4(6). *Id.*; *see* 1998 WL 283902 (June 1, 1998). State agency physician Mehr Siddiqui, M.D., affirmed Dr. Mikalov's findings on reconsideration and noted that "[p]rior administrative medical findings are consistent and supported by the initial level documentation." Tr. 139.

In August 2020, state agency psychological consultant Paul Tangeman, Ph.D., reviewed Crawley's mental health records including Dr. Konieczny's 2016 opinion and Dr. Josell's 2020 opinion. Tr. 128-29. Dr. Tangeman found those opinions persuasive and concluded that Crawley could perform simple, routine tasks with simple, short instructions; make simple decisions; and have a job that involves few workplace changes and no fast-paced production. Tr. 129. Dr. Tangeman explained that he was adopting the prior mental RFC "under AR 98-4 (*Drummond* Ruling)." Tr. 130. In November 2020, state agency psychologist Jennifer Swain, Ph. D., affirmed Dr. Tangeman's findings on reconsideration and noted that the "[p]rior administrative medical findings are consistent and supported by the initial level documentation." Tr. 141.

*Consultative Examiners*

In December 2016, Dr. J. Joseph Konieczny conducted a psychological consultative examination of Crawley at the request of the State Agency. Tr. 306–311. Dr. Konieczny opined that Crawley's "IQ place[d] him in the average

range of adult intellectual function" with memory capabilities in the low to average range and processing speed in the extremely low range. Tr. 309. He further noted that Crawley's working memory was in the low range, but his perceptual reasoning was in the high average range. *Id*. Konieczny remarked that Crawley experienced significant deficits in some nonverbal areas, including visual memory and discrimination, but significant strengths in serial reasoning. *Id*. Crawley's memory was generally in the extremely low-level range and was significantly lower than anticipated for his age, but Dr. Konieczny opined that Crawley appeared sincere in testing despite the results being "quite inconsistent with his apparent education and vocational history." Tr. 309.

Dr. Konieczny ultimately concluded that Crawley "suffered from a diagnosis of Major Neurocognitive Disorder, Without Behavioral Impairment." *Id*. He also found that Crawley experienced a depressive disorder. Tr. 310. Dr. Konieczny opined that Crawley would have significant limitations in his ability to understand, remember, and carry out instructions and with maintaining attention, concentration, and persistence. *Id*. Dr. Konieczny also assessed a diminished tolerance for responding appropriately to supervision and co-workers and diminished ability to respond to pressure in the work setting. *Id*.

In August 2020, Paul G. Josell, Psy.D., performed a consultative psychological evaluation of Crawley at the request of the State Agency. Tr. 582–85. On exam, Crawley completed serial 7's, making two early errors before

11

smoothy completing the task. Tr. 584. Dr. Josell estimated Crawley's intelligence to be generally within the average range. *Id*. He noted that Crawley had a history and current presentation of some processing difficulties, which were most likely related to focus and concentration and which may have been a side effect of his medication, along with significant memory impairment, the origin of which was unknown. *Id*. Ultimately, Dr. Josell concluded that Crawley experienced moderate persistent depressive disorder and opined that Crawley's mental impairments would affect his work-related abilities of: understanding and following directions; maintaining attention, concentration, persistence, and pace; and, withstanding stress and pressures associated with day-to-day work. Tr. 584–85.

*Opinion Evidence*

In August 2021, Dr. Belding completed a Physical Medical Source Statement. *See* Tr. 955–58. Dr. Belding opined that Crawley could stand or walk for less than two hours, in an eight-hour day, sit for four hours, in an eight-hour day, occasionally lift 10 pounds, and rarely lift 20 pounds. Tr. 956–57. Dr. Belding also checked a box indicating that, due to pain and weakness, Crawley needed to use a cane or other hand-held assistive device. Tr. 957. He wrote that "yes" the cane needed to be used for walking, standing, or both, but did not specify which of the three for which Crawley would need it. *Id*. He responded that "no" the devices did not need to be used all the time, but did not explain the circumstances under which they needed to be used. *Id*. Dr.

Belding also noted that Crawley would be off-task 20% of the workday and absent four days per month. Tr. 957–58.

*Function Report*

In June 2020, Crawley completed a function report detailing how his symptoms and conditions limited his activities. *See* Tr. 259–266. Crawley explained that he was unable to sit or stand very long and that he had swelling and nerve pain in his legs and feet. Tr. 259. Crawley described difficulty in using the bathroom when his neck stiffened and that he became "winded" when getting dress. Tr. 260.

*Hearing Testimony*[7]

In April 2024, Crawley testified at a telephonic hearing. Tr. 1037–60. He testified that he lived with his mother. Tr. 1044. Crawley explained that owing to his stroke and the fact that he used a walker, it was easier to move around at his mother's home, which was "a little more friendly to [his] condition." Tr. 1044. Crawley explained that his income consisted of long-term disability insurance payments from his previous employment. Tr. 1047.

The ALJ asked Crawley to explain "how [he's] been doing with [hi]s conditions and treatment" since the 2021 hearing. Tr. 1049. Crawley testified that he had a stroke in April 2024 and that his "physical abilities have

---

[7]    Discussion of the hearing testimony from both Crawley and the vocational expert is limited to the post-remand hearing in April 2024 because the decision resulting from that hearing is the only decision challenged in this matter.

declined" to the extent that he is "unable to take a shower by" himself and needed an outpatient nurse to assist with his care. Tr. 1049. He explained that he had a stroke earlier in April, which required a week of inpatient care, followed by care from outpatient nurses and therapists, who came to his house to assist with speech and mobility. Tr. 1051. Crawley stated that, during the time before his stroke, he drove with his mother to the store, but he did not go into the store to shop because he quickly lost his breath. Tr. 1053. He testified that he does not do chores but did "try to clean up behind himself." Tr. 1053–54. When asked about his condition before his stroke, he described swelling, primarily in his feet or ankles, which he dealt with by sitting down and elevating his feet. Tr. 1056. He stated that he previously used a cane to aid with balance and that it's use slowed him down. Tr. 1058. Crawley also explained that he could previously stand seven or eight minutes before the pain developed and could walk 30 to 40 yards before he was exhausted. Tr. 1059.

*Vocational Expert*

Qualified Vocational Expert Lauren Petkoff testified that a hypothetical individual who could perform work at the light level of exertion with additional limitations could not perform Crawley's past work, but that the hypothetical individual could perform other jobs. Tr. 1062-1063. In response to questions from Crawley's attorney, Petkoff testified that if the hypothetical individual was further limited to standing and walking only two hours in an eight-hour workday, he could not perform those occupations. Tr. 1063–64. And, if the

14

hypothetical individual needed a cane for balance at a workstation, the

additional limitation would preclude all work. Tr. 1064.

**ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status
requirements of the Social Security Act
through June 30, 2021.

2.    The claimant has not engaged in substantial
gainful activity since November 16, 2018, the
alleged onset date (20 CFR 404.1571 *et seq.*,
and 416.971 *et seq.*).

3.    Since the alleged onset date of disability,
November 16, 2018, the claimant has had the
following severe impairments: degenerative
disc    disease,    neurocognitive    disorder,
diabetes mellitus, obesity, chronic ischemic
heart    disease,    osteoarthritis    and    allied
disorders, and stroke (20 CFR 404.1520(c)
and 416.920(c)).

4.    Since November 16, 2018, the claimant has
not had an impairment or combination of
impairments that meets or medically equals
the severity of one of the listed impairments
in 20 CFR Part 404, Subpart P, Appendix 1
(20   CFR   404.1520(d),   404.1525,   404.1526,
416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire
record, I find that since November 16, 2018,
the claimant has the residual functional
capacity to perform light work as defined in
20 CFR 404.1567(b) and 416.967(b) except:
the claimant could stand or walk for 4 hours
in an 8-hour workday. He could occasionally
climb ramps or stairs. He could never climb
ladders,    ropes,    or    scaffolds.    He    could

15

frequently balance. He could occasionally stoop, kneel, crouch, or crawl. He could perform occasional bilateral overhead reaching. He would be limited to no exposure to unprotected heights or commercial driving. He would be limited to perform simple, routine tasks, but not at a production rate pace; and limited to occasional routine workplace changes.

6.    The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7.    Prior to the established disability onset date, the claimant was an individual closely approaching advanced age. On March 14.2024, the claimant's age category changed to an individual of advanced age (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not an issue in this case because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10.   Prior to March 14, 2024, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.   Beginning on March 14, 2024, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity,

16

there are no jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

12.   The claimant was not disabled prior to March 14, 2024, but became disabled on that date and has continued to be disabled through the date of this decision. His disability is expected to last twelve months past the onset date (20 CFR 404.1520(g) and 416.920(g)).

13.   The claimant was not under a disability within the meaning of the Social Security Act at any time through June 30, 2021, the date last insured (20 CFR 404.315(a) and 404.320(b)).

Tr. 1003–1014.

**Standard for Disability**

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1.   Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

17

2.  Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3.  Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4.  What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5.  Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920; *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id*. "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id*. If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**Standard of Review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court ... asks whether" the "existing administrative record ... contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citations omitted). The substantial evidence standard "is not high." *Id*. at 103. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citations omitted). The Commissioner's "findings ... as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v.*

19

*Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

> 1. *The ALJ properly applied the current* Earley *standard for subsequent applications based on a new period of time.*

Crawley first asserts that ALJ Ma erred by adopting ALJ Hixson's RFC while also finding that there was new and material evidence. *See* Doc. 7, at 10 (citing Tr. 1003). He claims that the ALJ's adoption of the prior RFC was the result of an "incorrect application of res judicata as set forth by the Sixth Circuit in *Earley*[,]" which required a "fresh look for a new period of alleged disability." Doc. 7, at 10. For the reasons discussed, the ALJ did not err.

In *Drummond v. Comm'r of Soc. Sec.*, the Sixth Circuit held that previous decisions "clearly demonstrate that the principles of res judicata can be applied against the Commissioner. When the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." 126 F.3d 837, 842 (6th Cir. 1997).

The Social Security Administration adopted this decision as Acquiescence Ruling 98-4(6), 63 Fed. Reg. 29,771 (June 1, 1998). In this Ruling the Administration instructed that:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators *must* adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with

20

> respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

*Id*. at 29, 773 (emphasis added).

As it turned out, the Social Security Administration overread *Drummond*. And in *Earley*, the Sixth Circuit corrected that error. The Court in *Earley* explained that "[w]hen an individual seeks disability benefits for a distinct period of time, each application is entitled to review. There is nothing in the relevant statutes to the contrary. And res judicata only 'foreclose[s] successive litigation of the very same claim.'" 893 F.3d at 933 ("a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994."). Rather, under *Earley*, a claimant is entitled to a "fresh review," *id*. at 934, free from the presumption that a previous "RFC remains the correct RFC for" a later claim, *Nadjl v. Comm'r of Soc. Sec.*, No. 21-cv-01578, 2022 WL 2820413, at *9 (N.D. Ohio July 8, 2022), *report and recommendation adopted*, 2022 WL 2818444 (N.D. Ohio July 18, 2022); *see also Anthony L.M. v. Comm'r of Soc. Sec.*, No. 3:20-cv-00525, 2022 WL 10638159, at *3–4 (S.D. Ohio June 27, 2022); *DiLauro v. Comm'r of Soc. Sec.*, No. 19-cv-2691, 2021 WL 1175415, at *3 (N.D. Ohio Mar. 29, 2021); *Ferrell v. Berryhill*, No. 16-cv-0050, 2019 WL 2077501, at *5 (E.D. Tenn. May 10, 2019) ("The point of *Earley*, … is that regardless of her chances of success, an applicant should have the opportunity for a full hearing, *with no presumptions applied*, when

21

the claim covers a new period of time not addressed in the prior hearing")
(emphasis added).

The Sixth Circuit also said in *Earley* that "it is fair for an administrative
law judge to take the view that, absent new and additional evidence, the first
administrative law judge's findings are a legitimate, *albeit not binding*,
consideration in reviewing a second application." 893 F.3d at 933 (emphasis
added). An ALJ may "consider a previous ALJ's RFC" determination but "errs
… when he considers the previous RFC a mandatory starting point for the
analysis." *Gale v. Comm'r of Soc. Sec.*, No. 18-cv-00859, 2019 WL 8016516, at
*5 (W.D. Mich. Apr. 17, 2019), *report and recommendation adopted*, 2020 WL
871201 (W.D. Mich. Feb. 21, 2020).

Here, ALJ Ma did what *Earley* and its progeny instruct—she took a
"fresh look" and considered the entire record including the new evidence. 893
F.3d at 934. The fact that she ultimately reached a similar conclusion as ALJ
Hixson does not itself demonstrate an error. Crawley even acknowledges that
the ALJ did not state that she relied on ALJ Hixson's determination. Doc. 7, at
13, *see also id.* at 11 (recognizing that the ALJ stated she did not apply
*Drummond*). Crawley also provides no citation to support his claim that the
"ALJ's RFC effectively adopted the findings of the prior ALJ and failed to
independently review Plaintiff's impairments for the new period of disability."

22

*Id.* at 14. And review of the ALJ's decision belies this claim and shows that Crawley is effectively trying to fell a strawman.[8]

While ALJ Ma recognized that Crawley had previously filed an application in 2016, she also specifically recognized that this case arose out of a new application for a new period of disability. Tr. 1002. She further found that "the record shows new and additional evidence indicating change in the claimant's condition since the prior decision." Tr. 1003. And ALJ Ma's decision demonstrates that she considered the new evidence. *See e.g.*, Tr. 1008 (considering the effect of Crawley's April 2024 stroke); Tr. 1009 (discussing medical records from, for instance, September 2022, January 2023, November 2023, and March 2024).

Crawley also argues that ALJ Ma erred by relying on state agency reviewers' opinions because they "violated the law in this matter and relied on the prior ALJ's findings." Doc. 7, at 14. But ALJ Ma did not exclusively rely on those state agency opinions in crafting the RFC, Tr. 1010–12, or fail to consider their consistency or supportability, Tr. 1010. (explaining that the assessments "were supported by the evidence relied upon" and "consistent with the medical evidence"). The ALJ explained that the state agency consultants' opinions were persuasive based on the evidence considered by those consultants, not based

---

[8]     Crawley repeatedly asserts that ALJ Ma applied the wrong standard of review. *See* Doc. 7, at 9, 11, 14. But a standard of review is what a court performing an appellate function applies when reviewing a subornative adjudicator's decision. *See* Standard of Review, Black's Law Dictionary (12th ed. 2024).

on their application of *Drummond*. *Id.* ALJ Ma's explanation also makes clear that she evaluated the state agency consultants' opinions through the lens of the current record, including Crawley's current condition. *Id.* (considering those opinions in connection with records of Crawley's treatment for various conditions including records from 2021 through 2024, such as his back and knee injections). Further, nothing in the record suggests that ALJ Ma adopted the state agency consultants' opinions based on a belief that she was bound to under *Drummond*. Instead, her decision as a whole demonstrates that she considered the broader record to render a decision based on substantial evidence while also finding that the state agency consultants' opinions were persuasive. Tr. 1010–11. This finding does not, without more, justify remand.

2. *The ALJ properly assessed the medical opinions of record on remand.*

Crawley's second argument is somewhat disconnected from its heading. His argument heading, which alleges that "[t]he ALJ erroneously failed to comply with the order of remand when she improperly assessed the opinions of the treating and examining sources[,]" suggests that this section would contain an argument about whether the ALJ complied with the Remand Order.[9] Doc. 7, at 15. But, on review, this portion of Crawley's argument is

---

[9] Neither party discusses whether this Court has jurisdiction to adjudicate an ALJ's alleged failure to adhere to an Appeals Council's remand order. But most courts in this Circuit have found that federal courts lack jurisdiction to consider this issue. *See Sisson v. Colvin*, No. 5:15-CV-552, 2016 WL 8671906, at *12 (N.D. Ohio June 14, 2016) (internal citations omitted). So if this is Crawley's argument, it fails.

better characterized as challenging the ALJ's consideration of medical opinion evidence in compliance with applicable regulations. *See* Doc. 7, at 16–22. Although Crawley generally explains certain directives in the Remand Order, albeit without any specific citation to the directives in that order, his arguments in this section contest the ALJ's consideration of certain medical opinions. *See e.g.* Doc. 7, at 16–17 (arguing that the ALJ erred in evaluating the Dr. Belding's opinion and otherwise failed to support her decision that his opinion was unpersuasive with substantial evidence); *id.* at 21 (challenging the ALJ's explanation for excluding certain limitations from the RFC). So the Court interprets Crawley's argument as taking issue with the ALJ's evaluation of opinion evidence.[10]

The Commissioner is required to evaluate the persuasiveness of all medical opinions using the following factors: supportability; consistency; treatment relationship, including the length, frequency, purpose, and extent; specialization; and other factors. 20 C.F.R. §§ 416.920c(a), 416.920c(c)(1)–(5). Supportability and consistency are the most important factors. 20 C.F.R. § 416.920c(a). Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] … the more persuasive the medical

---

[10]    Crawley briefly argues that ALJ Ma failed to comply with this Court's order remanding his case. Doc. 7, at 22. But this Court's order only generally remanded for "further development of the administrative record, as necessary to determine whether Plaintiff is disabled." Tr. 1098. Crawley doesn't explain how ALJ Ma violated this directive.

opinions … will be." 20 C.F.R. § 416.920c(c)(1). Consistency means "[t]he more consistent a medical opinion[] … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] … will be." 20 C.F.R. § 416.920c(c)(2). The Commissioner must explain the supportability and consistency factors when discussing a medical opinion. 20 C.F.R. § 416.920c(b)(2). "[A]n ALJ need not," however, "specifically use the terms 'supportability' or 'consistency' in his analysis." *Cormany v. Kijakazi*, No. 5:21-cv-933, 2022 WL 4115232, at *3 (N.D. Ohio Sept. 9, 2022) (citing cases). The Commissioner is not required to discuss the remaining factors. *Id.* "A reviewing court evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Toennies v. Comm'r of Soc. Sec.*, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (internal quotation marks and citation omitted).

As to Dr. Belding's opinion, the ALJ properly considered the supportability and consistency of that opinion as required under the regulations cited. *See* Tr. 1010. Crawley argues that the ALJ's "conclusion" on remand that Dr. Belding's opinion remained inconsistent "is incorrect." Doc. 7, at 17. A major issue with this argument, however, is that Crawley did not include a summary of Dr. Belding's medical source statement in the factual summary in his brief. *See* Doc. 7, at 2–5. Instead, nearly all of the evidence that Crawley cites in an attempt to show that Dr. Belding's opinion is consistent is cited for the first time in the argument section of his brief. *Compare* Doc. 7, at

26

2–5 *with id.* at 16–18 (citing portions of Dr. Belding's records and other evidence of record in an effort to show that "medical records detailing [Crawley's] physical limitations supported and were consistent with the opinion of Dr. Belding."). Nevertheless, he relies on this evidence in the *Argument* section of his brief. This matters because, as the Court's Initial Order states: "[t]he Court will not consider facts referenced in a party's argument unless those facts have been set out in the *Facts* section of the party's brief." Doc. 4, at 4. Crawley's counsel has been repeatedly warned that evidence cited for the first time in a given argument section will not be considered. *See, e.g.*, *Milliron v. Comm'r of Soc. Sec.*, No. 22-cv-1200, 2023 WL 4211041, at *8 n.10 (N.D. Ohio March 20, 2023), *report and recommendation adopted*, 2023 WL 4205214 (N.D. Ohio June 27, 2023); *Mencke v. Comm'r of Soc. Sec.*, Case No. 21-cv-2298, 2022 WL 2758577, at *1 n.2 (N.D. Ohio July 14, 2022). Since the evidence on which Crawley relies for this argument was not set out in the *Facts* section of his brief, the Court need not consider it and Crawley's argument is left with little-to-no record support.

But, even if this evidence were considered, Crawley's argument is meritless because the ALJ's decision demonstrates that she considered the supportability and consistency factors when assessing the persuasiveness of Dr. Belding's opinion. Tr. 1010. The ALJ explained that:

> Dr. Belding's assessment is not persuasive because the restrictions were *unsupported* by the medical evidence relied upon, including Dr. Belding's treatment notes containing the claimant's repeated

> reports of significant improvement in his back pain
> following his surgeries. The limitations were also
> *excessive and inconsistent* with the medical evidence,
> such as the claimant's presentation with normal
> gait, normal balance, and full motor strength during
> treatment.

*Id.* (emphasis added). The face of the ALJ's decision demonstrates that she considered the required factors. Moreover, the fact that Crawley can point to evidence that he believes supports a different conclusion than the one that the ALJ reached does not make the ALJ's conclusion "incorrect" or otherwise provide a basis for remand. *See Jones*, 336 F.3d at 477 (explaining that even if a claimant can point to evidence in support of their preferred outcome, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ"). So, the ALJ's consideration of Dr. Belding's opinion does not support remand.

As to Dr. Konieczny's consultative opinion from 2016, which the ALJ found *partially* persuasive, Tr. 1011, Crawley claims that "the RFC in this matter failed to include limitations consistent with these restrictions regarding [Crawley's] memory and concentration capabilities." Doc. 7, at 21. Specifically, Crawley asserts that the ALJ erred when she excluded certain limitations from her ultimate RFC, in violation of *Kinney v. Comm'r of Soc. Sec.*, No. 23-3889, 2024 WL 2273365, at *3–4 (6th Cir. May 20, 2024). *Id*.

In *Kinney* the Sixth Circuit held that an ALJ need not incorporate every limitation set out in a medical opinion, even where that medical source's opinion is considered persuasive. 2024 WL 2273365, at *3 (citing *Reeves v.*

*Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015)). But the Court clarified that if an ALJ finds that a medical opinion is persuasive but decides not to include all limitations set out in that medical opinion, then the ALJ must explain why the ALJ did not include all of the limitations. *Id.* (citing Social Security Ruling 96-8p, 61 Fed. Reg. 34,474 (July 2, 1996)).

Here, because the ALJ found Dr. Konieczny's opinion only partly persuasive, *Kinney*, which addresses the exclusion of limitations from persuasive opinions, is distinguishable. *See* Tr. 1010-11 (explaining that only portions of the opinion were persuasive). Additionally, the ALJ expressly explained why certain portions of Dr. Konieczny's opinion were or were not persuasive. *See* Tr. 1011. As the ALJ recognized, Dr. Konieczny offered his opinion based on an examination that "was performed significantly prior to the alleged onset date of November 16, 2018." *Id.* So:

> the opinion is still relevant *for the purposes of background/historical information*. I find Dr. Konieczny's assessment was persuasive in terms of his recommendation for simple work with limited workplace pace/changes because the limitations were supported by the medical evidence relied upon, such as the claimant's presentation with very significant deficits in the area of processing speed and deficits in memory during the clinical exam. *I do not find the remaining limitations were persuasive because the restrictions were inconsistent with the medical evidence, including the claimant's presentation with normal mental status exam findings throughout treatment.*

*Id.* (emphasis added). The face of the ALJ's evaluation directly undercuts Crawley's argument. It shows that the ALJ did not find Dr. Konieczny's opinion persuasive and that the ALJ explained why certain limitations were or were not included from that opinion due to their inconsistency with the entire record of treatment.

A similar issue exists as to Crawley's challenge to Dr. Josell's psychological evaluation. *See* Doc. 7, at 20. He first points out that the ALJ found Dr. Josell's opinion "*persuasive in terms of* his recommendation for impaired understanding and following direction; maintaining attention, concentration, and pace; and withstanding stress and pressures associated with day-to-day work." *Id.* Immediately after recognizing that the ALJ found Dr. Josell's opinion persuasive in these limited terms, Crawley argues that the ALJ erred by excluding other limitations. *Id.* This argument ignores the face of the ALJ's decision, and Crawley's own argument, because those other limitations were not included in the ALJ's description of what she found persuasive. *See id.*; *see also* Tr. 1011. Crawley provides no support for his conclusory assertion that the ALJ was required to adopt limitations she did not find persuasive.

So, none of the arguments contained in Crawley's second issue provide a basis to remand.

### 3. *The ALJ appropriately considered the evidence when assessing the functional limitations to Crawley's RFC.*

As his third issue, Crawley makes two arguments. He asserts that substantial evidence does not support the ALJ's determination that he could perform light work and he asserts that the ALJ erred when she failed to include a limitation in Crawley's RFC for use of a cane. *See* Doc. 7, at 23–25.

The first argument is easily dispatched. The entirety of this aspect of Crawley's third issue comes down to the assertion that evidence supports his assertion that he can't "stand/walk [for] the time necessary to perform work at the light level of exertion." *Id*. at 24. But Crawley's task before this Court is to show that substantial does not support the ALJ's determination. Opining that other evidence supports his preferred conclusion does not help him shoulder his burden. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) ("The decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ.").

As to the second half of Crawley's third issue, it should be acknowledged that Dr. Belding indicated that, due to Crawley's pain and weakness, Crawley needed "a cane or other hand-held assistive device" for walking and standing but "not at all times." Tr. 957. For the reasons explained below, however, neither this opinion nor any of Crawley's arguments demonstrate a basis to remand based on exclusion of a cane limitation.

If an assistive device is "not a necessary device for [a] claimant's use, it cannot be considered an exertional limitation that reduce[s] [the claimant's] ability to work." *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002). To be considered a necessary restriction or limitation, an assistive device "must be so necessary that it would trigger an obligation on the part of the Agency to conclude that the [device] is medically necessary." *Murphy v. Astrue*, No. 11-cv-114, 2013 WL 829316, at *10 (M.D. Tenn. March 6, 2013) (citations omitted). To be *medically necessary*, the record must reflect "more than just a subjective desire on the part of the plaintiff as to the use of a[n] [assistive device]." *Id.* (citation omitted). And there must be medical documentation "describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." Soc. Sec. Ruling 96-9p, 1996 WL 374185, *7 (S.S.A. July 2, 1996); *see Golden v. Berryhill*, No. 1:18-cv-636, 2018 WL 7079506, at *19 (N.D. Ohio Dec. 12, 2018) ("a cane prescription [that] does not indicate 'the circumstances for which [the cane] is needed,' … does not fulfil the requirements under SSR 96-9p"), *report and recommendation adopted*, 2019 WL 415250 (N.D. Ohio Feb. 1, 2019).

"If the ALJ does not find that such device would be medically necessary, then the ALJ is not required to pose a hypothetical to the V[ocational] E[xpert]" which includes the use of an assistive device. *Murphy*, 2013 WL 829316, at *10 (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.

32

1993)). Generally, an ALJ's finding that an assistive device is not *medically necessary* is error when the claimant is prescribed an assistive device and the ALJ does not include the use of the device in the RFC and fails to provide an explanation for omitting it. *Cruz-Ridol v. Comm'r of Soc. Sec.*, No. 17-cv-1075, 2018 WL 1136119, at *15 (N.D. Ohio Feb. 12, 2018) (citing *Watkins v. Comm'r of Soc. Sec.*, No. 16-cv-2643, 2017 WL 6419350, at *11 (N.D. Ohio Nov. 22, 2017)), *report and recommendation adopted*, 2018 WL 1083252 (N.D. Ohio Feb. 28, 2018).

Crawley cites four matters in support of his argument for a cane limitation. First, he cites his testimony that he used a cane. Tr. 70, 1058. Second, Dr. Belding's August 2021 evaluation indicated that Crawley needed "a cane or other hand-held assistive device" for walking and standing due to Crawley's pain and weakness. Tr. 957. Third, he cites certain medical records that reported Crawley used a cane. *See* Tr. 307, 583; *see also* Doc. 7, at 24 (citing other instances of using a cane in the record for the first time in his argument). And fourth, the vocational expert testified in response to Crawley's attorney's question that a limitation requiring "a cane for balance would preclude all work." Doc. 7, at 25 (citing Tr. 1064); *see also id.* (citing earlier vocational expert testimony that use of a cane due to pain and weakness "would limit the person to work at the sedentary level of exertion.").

To find that a "hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive

device to aid in walking or standing*, and describing the circumstances for which it is needed*." SSR 96-9p, 1996 WL 374185, at *7. To show that an assistive device must have been required, *a claimant* "must also show that his medical records *specifically document the circumstances in which he required an assistive device*—i.e., whether he required one at all times, during all activities, and on all terrains." *Barnes v. Comm'r of Soc. Sec.*, No. 5:21-CV-01688-JDA, 2023 WL 2988346, at *8 (N.D. Ohio Mar. 22, 2023) (emphasis added); *see* SSR 96-9p, 1996 WL 374185, at *7.

Here, Crawley points to no evidence from Dr. Belding, or any other medical source, that "specifically document[s] the circumstances in which he required an assistive devices" such that Ruling 96-6p required the ALJ to discuss the use of hand-held assistive devices. *See* 2023 WL 2988346, at *8. Indeed, Dr. Belding's check-the-box opinion provided an insufficient description of when a cane would be needed. *See* Tr. 957. It indicates that Crawley needed a cane when walking or standing, but also said that he did not need a cane "all of the time" and it failed to provide specific times when Crawley would need a cane. *Id.* Crawley has also not pointed to any record evidence that he had a prescription for a cane. And the fact that Crawley was observed walking with a cane or testified about using a cane doesn't show that a cane was medically necessary. *See Parrish v. Berryhill*, No. 16-cv-1880, 2017 WL 2728394, at *12 (N.D. Ohio June 8, 2017) ("While there are some indications in the medical records that Plaintiff was using a cane, this is

insufficient to establish that the cane was medically required"), *report and recommendation adopted*, 2017 WL 2720332 (N.D. Ohio June 23, 2017).

Perhaps an even greater flaw in Crawley's argument is that the ALJ explicitly found that Dr. Belding's opinion, which is the only medical opinion indicating that Crawley needed a cane, was unpersuasive. Tr. 1010. As explained above, the ALJ's rationale for finding Dr. Belding's opinion unpersuasive complied with applicable regulations. Crawley does not address how this finding affects the ALJ's evaluation. He likewise does not point to anything that would support an argument that the ALJ erred by omitting a limitation from an unpersuasive opinion.

So, Crawley's third issue does not provide a basis for remand.

**Conclusion**

For the reasons explained above, I recommend that the Court affirm the Commissioner's decision.

Dated: May 20, 2025

*/s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–531 (6th Cir. 2019).