UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL E. CRAWLEY, JR., | ) | CASE NO. 1:24-CV-01760 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Before the Court is Magistrate Judge James E. Grimes Jr.'s Report and Recommendation ("R&R") recommending the Commissioner of Social Security's decision be affirmed. (Doc. 11.) Plaintiff Paul E. Crawley, Jr. ("Crawley") timely filed objections (Doc. 12), and Defendant Commissioner of Social Security ("Defendant") responded (Doc. 13).

For the reasons stated herein, Crawley's objections are OVERRULED, the R&R is ACCEPTED and ADOPTED, and the Commissioner's final decision is AFFIRMED.

I.   **BACKGROUND**

   A.   **Medical History**

Crawley does not object to the factual record and procedural history in the R&R. (*See* Doc. 12.) Notwithstanding, the Court summarizes the facts pertinent to Crawley's objections.

In his applications for disability insurance and supplemental security income, Crawley claimed he was disabled due to back issues, kidney problems, gout, knee issues, arthritis, diabetes, and neck problems. (Doc. 6 at 246-56, 280.)[1]

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document

Crawley was treated for complaints of chronic back pain. (*See id.* at 1036.) Crawley underwent back surgeries in 2018 and 2019. (*Id.* at 456, 506, 1036.) In April 2019, Crawley reported his back pain had "markedly improved" after surgery and that he was beginning to exercise and weight lift again. (*Id.* at 456.) In February 2020, at a six-month follow up for his lumbar laminectomy, Crawley reported his back was still improving but he had tingling in his right leg. (*Id.* at 500.) On examination, he had normal strength in his upper and lower extremities and a normal gait. (*Id.* at 501.) In October 2020, Crawley reported he continued to feel better than before surgery. (*Id.* at 989.) Once again, he had normal strength in his upper and lower extremities and a normal gait. (*Id.* at 991.) In June 2021, Crawley reported his back pain was better, but he still had trouble with long distance walking. (*Id.* at 996.) On examination, his strength was intact, and he was doing fairly well two years post-surgery. (*Id.*) In September 2022, Crawley reported a 70% reduction in pain after a lumber medial branch block. (*Id.* at 1780.) On examination, he had normal strength in the lower extremities and a normal gait. (*Id.* at 1783-84.) In January 2023, Crawley was treated with lumbar radiofrequency ablation. (*Id.* at 1744.) He was very pleased with his results. (*Id.*) Crawley reported an 85% relief in back pain but was still having sciatic nerve pain and tingling in the feet. (*Id.* at 1744, 1755.) He was doing daily exercises at home. (*Id.* at 1744.)

Crawley also complained of knee pain. In June 2021, X-rays showed osteoarthritis of the left and right knees with loss of joint surface cartilage, sclerosis, and spurring. (*Id.* at 1426.) In January 2023, Crawley reported that physical therapy helped his knees, and he felt like he could dance. (*Id.* at 1755.)

---

and PageID# rather than any internal pagination.

Crawley was also treated for coronary artery disease. In September 2019, he went to the emergency room for shortness of breath and chest pain. (*Id.* at 348.) He reported being able to walk a mile on the treadmill with no chest pain. (*Id.*) Crawley was diagnosed with chest pain with malignant essential hypertension and angina, diabetes mellitus type 2, and obstructive sleep apnea. (*Id.* at 350.) In an October 2019 follow up, Crawley reported he could only walk a quarter mile. (*Id.* at 453.) He was diagnosed with dyspnea on exertion, diabetes mellitus type 2, and chronic kidney disease. (*Id.* at 454.) In November 2023, Crawley went to the emergency room for lightheadedness and weakness due to intermittent fasting. (*Id.* at 1358.) His symptoms improved after drinking juice. (*Id.*)

In April 2024, Crawley was hospitalized after having an acute ischemic stroke. (*Id.* at 2569-70.) He was treated with medication and his initial deficits resolved. (*Id.* at 2570, 2583.) Crawley was discharged in stable condition and prescribed physical and occupational therapy for stroke rehabilitation. (*Id.* at 2582, 2652.)

**B.    Medical Opinions**

In December 2016, Dr. J. Joseph Konieczny conducted a psychological consultative examination at the state agency's request. (*Id.* at 334-39.) Dr. Konieczny opined that Crawley's "IQ place[d] him in the average range of adult intellectual function" with memory capabilities in the low to average range and processing speed in the extremely low range. (*Id.* at 337.) He diagnosed Crawley with Major Neurocognitive Disorder, Without Behavioral Impairment. (*Id.*) Dr. Konieczny believed Crawley would have significant limitations in his ability to understand, remember, and carry out instructions and with maintaining attention, concentration, and persistence. (*Id.* at 338.) He also believed Crawley would have a diminished tolerance for frustration and diminished coping skills. (*Id.*)

In June 2020, state agency medical consultant Abraham Mikalov, M.D., reviewed Crawley's medical records from 2018 through 2020. (*Id.* at 152-59.) Dr. Mikalov concluded Crawley had the residual functional capacity to perform light work. (*Id.* at 157.) In an eight-hour workday, Crawley could sit for six hours and stand or walk for four hours. (*Id.*) On reconsideration, state agency physician Mehr Siddiqui, M.D., affirmed Dr. Mikalov's findings. (*Id.* at 167.) Dr. Siddiqui noted the "[p]rior administrative medical findings are consistent and supported by the initial level documentation" and the "[c]urrent documentation supports the [] RFC." (*Id.*)

In August 2020, Paul G. Josell, Psy.D., performed a consultative psychological examination at the state agency's request. (*Id.* at 610-613.) Crawley completed serial 7's, making two early errors before smoothly completing the task. (*Id.* at 612.) Dr. Josell believed Crawley's intelligence was within the average range. (*Id.*) Crawley had some processing difficulties along with significant memory impairment. (*Id.*) Dr. Josell concluded Crawley experienced moderate persistent depressive disorder. (*Id.*) He opined that Crawley's mental impairments would affect his work-related abilities of understanding and following directions, maintaining attention, concentration, persistence, and pace, and withstanding stress and pressures of daily work. (*Id.* at 612-13.)

Also in August 2020, state agency psychological consultant Paul Tangeman, Ph.D., reviewed Crawley's mental health records. (*Id.* at 155-58.) Dr. Tangeman's review included the opinions from Dr. Konieczny and Dr. Josell. (*Id.* at 156-57.) Dr. Tangeman found those opinions persuasive and concluded Crawley could perform simple, routine tasks with simple, short instructions, make simple decisions, and have a job that involved few workplace changes and no fast-paced production. (*Id.*) In November 2020, state agency Jennifer Swain, Ph.D.,

affirmed Dr. Tangeman's findings on reconsideration. (*Id.* at 169.) She noted the "[p]rior administrative medical findings are consistent and supported by the initial level documentation" and the "[c]urrent documentation supports the [] MRFC." (*Id.*)

In August 2021, Jonathan Belding, M.D., completed a Physical Medical Source Statement. (*Id.* at 983-86.) Dr. Belding opined that in an eight-hour workday, Crawley could stand or walk for less than two hours, sit for four hours, occasionally lift ten pounds, and rarely lift twenty pounds. (*Id.* at 984-85.) He indicated that due to pain and weakness, Crawley needed to use a cane or other hand-held assistive device. (*Id.* at 985.) Dr. Belding further indicated Crawley did not need an assistive device all the time. (*Id.*)

C.     **Function Report and Hearing Testimony**

In June 2020, Crawley completed a function report detailing how his conditions limited his activities. (*Id.* at 287-94.) He reported he was unable to sit or stand very long and had swelling and nerve pain in his legs and feet. (*Id.* at 287.) Crawley described difficulty using the bathroom when his neck stiffened and became winded when getting dressed. (*Id.* at 288.)

Crawley testified at the April 2024 hearing. (*Id.* at 1072-89.) He lived with his mother. (*Id.* at 1072.) Due to his stroke and use of a walker, it was easier to move around at his mother's house. (*Id.*) Since the 2021 hearing, Crawley testified his "physical abilities have declined more." (*Id.* at 1077.) In April 2024, his stroke required a week of inpatient care followed by care from outpatient nurses and therapists. (*Id.* at 1078-79.)

Before his stroke, Crawley could drive with his mother to the store, but did not go inside because he quickly lost his breath. (*Id.* at 1081.) He did not do chores but tried to clean up after himself. (*Id.* at 1081-82.) On his condition before his stroke, Crawley described swelling in his feet or ankles, which he dealt with by sitting down and elevating his feet. (*Id.* at 1084.) He previously used a cane to aid with balance. (*Id.* at 1086.) Crawley could previously stand seven

or eight minutes before having pain and could walk thirty to forty yards before becoming exhausted. (*Id.* at 1087.)

Vocational Expert ("VE") Lauren Petkoff testified that a hypothetical individual who could perform work at the light level of exertion with additional limitations could not perform Crawley's past work but could perform other jobs. (*Id.* at 1090-91.) Petkoff stated that if the hypothetical individual was further limited to standing and walking only two hours in an eight-hour workday, he could not perform those jobs. (*Id.* at 1091-92.) If the hypothetical individual needed a cane for balance at a workstation, that limitation would preclude all work. (*Id.* at 1092.)

D.  **ALJ's Decision**

On July 5, 2024, the ALJ issued a partially favorable decision. (Doc. 6 at 1027-42.) The ALJ found Crawley had severe impairments, namely degenerative disc disease, neurocognitive disorder, diabetes mellitus, obesity, chronic ischemic heart disease, osteoarthritis and allied disorders, and stroke. (*Id.* at 1033.) These impairments significantly limited Crawley's ability to perform basic work activities. (*Id.*) Crawley's essential hypertension, chronic kidney disease, and depression placed no more than a minimal limitation on his ability to perform basic work activities. (*Id.*) These impairments alone or in combination were insufficient to meet or medically equal the severity of one of the impairments listed in 20 CFR Part 404, Subpart P. (*Id.* at 1033-35.) Since November 16, 2018, Crawley had the residual functional capacity to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b). (*Id.* at 1035.) Crawley could stand or walk for four hours in an eight-hour workday. (*Id.*) He could occasionally climb ramps or stairs but could never climb ladders, ropes, or scaffolds. (*Id.* at 1035-36.) Crawley could frequently balance and could occasionally stoop, kneel, crouch, or crawl. (*Id.* at 1036.) He could perform occasional bilateral overhead reaching but would be limited to no exposure to

unprotected heights or commercial driving. (*Id.*) Crawley would be limited to perform simple, routine tasks, but not at a production rate pace. (*Id.*) He would be limited to occasional routine workplace changes. (*Id.*) However, beginning on March 14, 2024, there were no jobs Crawley could perform. (*Id.* at 1041.) The ALJ concluded Crawley was not disabled before March 14, 2024, but became disabled on that date. (*Id.*)

### E. Procedural History

#### 1. Previous Application

In July 2016, Crawley filed an application for disability insurance benefits. (Doc. 6 at 116.) He alleged a disability onset date of September 19, 2015. (*Id.*) His application was denied initially and on reconsideration. (*Id.*) Crawley requested a hearing before an ALJ. (*Id.*) On June 19, 2018, ALJ Traci Hixson held a hearing. (*Id.*) On November 15, 2018, ALJ Hixson found Crawley was not disabled. (*Id.* at 113-36.) On December 2, 2019, the Appeals Council affirmed ALJ Hixson's decision. (*Id.* at 137-42.)

#### 2. Current Applications

In March 2020, Crawley filed new applications for disability insurance and supplemental security income benefits. (*Id.* at 246-56.) He alleged a disability onset date of September 30, 2015. (*Id.*)

His applications were denied initially and on reconsideration. (*Id.* at 187, 198.) Crawley requested a hearing before an ALJ. (*Id.* at 205.) On October 22, 2021, ALJ Catherine Ma held a telephonic hearing. (*Id.* at 75.) Crawley was represented by counsel at the hearing. (*Id.*) Crawley and VE Brett Salkin testified. (*Id.*) At the hearing, Crawley amended the alleged onset date to November 10, 2018. (*Id.* at 45.) On December 22, 2021, ALJ Ma found Crawley was not disabled. (*Id.* at 40-64.)

Crawley appealed ALJ Ma's decision to the Appeals Council.  (*Id.* at 29.)  On February 17, 2023, the Appeals Council denied Crawley's appeal.  (*Id.*)  On April 19, 2023, Crawley filed a Complaint challenging ALJ Ma's December 2021 decision in *Crawley v. Commissioner of Social Security*, No. 23-cv-799 (N.D. Ohio).  On September 28, 2023, by stipulation of the parties, the Court remanded the mater for further consideration of Crawley's claim.  (*Crawley v. Commissioner of Social Security*, No. 23-cv-799, Doc. 11.)

On December 2, 2023, the Appeals Council vacated ALJ Ma's December 2021 decision.  (Doc. 6 at 1129-30.)  The Appeals Council found the December 2021 decision did "not contain an adequate evaluation of the medical source opinions from Jonathan Belding, M.D. and Joseph Konieczny, Ph.D."  (*Id.* at 1129.)  Upon remand, the Appeals Council directed the ALJ to give further consideration to the medical source opinions, prior administrative medical findings, and Crawley's maximum residual functional capacity, and, if warranted, obtain supplemental evidence from a VE.  (*Id.* at 1130.)

On April 25, 2024, ALJ Ma held a telephonic hearing.  (*Id.* at 1063-94.)  Crawley was represented by counsel at the hearing.  (*Id.* at 1063.)  Crawley and VE Lauren Petkoff testified.  (*Id.*)  The alleged onset date was amended to November 16, 2018.  (*Id.* at 1030.)  On July 5, 2024, ALJ Ma issued a partially favorable decision.  (*Id.* at 1027-42.)  ALJ Ma found Crawley was not disabled prior to March 14, 2024, but became disabled on that date.  (*Id.* at 1041.)

On October 10, 2024, Crawley appealed ALJ Ma's July 2024 decision to this Court.  (Doc. 1.)  He raised three assignments of error.  (Doc. 7.)  On May 20, 2025, the R&R recommended the Court affirm the Commissioner's final decision.  (Doc. 11.)  Crawley timely submitted two specific objections.  (Doc. 12.)  The Commissioner responded.  (Doc. 13.)

## II.   LAW AND ANALYSIS

### A.   Standard of Review

A district court "shall make a *de novo* determination of those portions or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C) (flush language); *see Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1, 1994 U.S. App. LEXIS 35044 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to *de novo* review by the district court in light of specific objections filed by any party.") (citations omitted). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C) (flush language).

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The impairment must prevent the claimant from doing the claimant's previous work, as well as any other work which exists in significant numbers in the region where the individual lives or in several regions of the country.  42 U.S.C. § 423(d)(2)(A).  In making a disability determination, an ALJ engages in a five-step sequential evaluation:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.  To be severe, the claimant must have a severe medically determinable physical or mental impairment, or a combination of impairments, that must have lasted or be expected to last for at least 12 months, unless it is expected to result in death.

3. If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed

>   impairment in Appendix 1 to Subpart P of Part 404, the claimant is presumed disabled without further inquiry.
>
> 4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work.  If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 426 (6th Cir. 2018) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)).

During the first four steps, the claimant has the burden of proof.  *Walters*, 127 F.3d at 529.  The burden shifts to the Commissioner at step five.  *Id.*

The Court's review of the Commissioner's decision to deny benefits is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.  42 U.S.C. § 405(g); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010).  "Substantial evidence is 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 521 (6th Cir. 2008) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal citation omitted)).  If substantial evidence supports the Commissioner's finding the claimant is not disabled, that finding must be affirmed even if the reviewing court would decide the matter differently.  *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citation omitted).

A reviewing court may not resolve conflicts in evidence or decide questions of credibility.  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted).  The Commissioner's decision must be affirmed even if the claimant's position is also supported by substantial evidence.  *Wallace v. Comm'r of Soc. Sec.*, 221 F.3d 1337 (6th Cir. 2000) (unpublished table decision) (citing *Casey v. Sec'y of Health and Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)).

**B.**     **First Objection: The R&R's Finding That The ALJ Applied The Correct Standard Of Review Was Factually And Legally Incorrect**

In *Drummond v. Comm'r of Soc. Sec.*, the Sixth Circuit held "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances."  126 F.3d 837, 842 (6th Cir. 1997).  In *Earley v. Comm'r of Soc. Sec.*, the Sixth Circuit clarified *Drummond*'s scope.  893 F.3d 929 (6th Cir. 2018).  The Sixth Circuit held res judicata applies to subsequent applications for "the same period of time . . . rejected by the first application."  *Id.* at 933.  But res judicata does not apply where the subsequent application covers a different period of time.  *Id.*  Under *Earley*, a claimant is entitled to a "fresh review of a new application for a new period of time."  *Id.* at 934.

There are several indicators that an ALJ took a "fresh look" of the new application: (1) the ALJ disclaims reliance on the previous decision, (2) "start[ing] anew at each step of the evaluation," (3) "balance[ing] new testimonial evidence" against other medical evidence, (4) "focus[ing] on medical evidence from the period after the first decision," and (5) "factoring new datapoints" to asses new restrictions.  *Gooden v. Comm'r of Soc. Sec.*, No. 23-3927, 2024 WL 2830817, at *5-6, 2024 U.S. App. LEXIS 13711 (6th Cir. June 4, 2024) (ALJ gave fresh review to new application by stating she was not bound by first ALJ's findings and independently assessing each allegation in new application); *Dennis D. v. Comm'r of Soc. Sec.*, No. 23-3667,

2024 WL 1193662, at *4-5, 2024 U.S. App. LEXIS 6829 (6th Cir. Mar. 20, 2024) (same); *see also Neal v. Comm'r of Soc. Sec.*, No. 24-CV-00237, 2024 WL 4275743, at *9-12, 2024 U.S. Dist. LEXIS 171803 (N.D. Ohio Sept. 24, 2024) (ALJ correctly applied *Earley* by conducting fresh review of claimant's second application).

Crawley argues the ALJ erroneously relied on the findings of the state agency reviewing sources who adopted the prior ALJ's findings under *Drummond*.  (Doc. 12 at 3225-28.)  To Crawley, the ALJ failed to offer this claim a fresh look as required under *Earley*.  (*Id.*)

Here, Crawley's current application covers a different time period from his previous application.  The ALJ explicitly found "the record shows new and additional evidence indicating change in the claimant's condition since the prior decision."  (Doc. 6 at 1031.)  The ALJ's decision reflects consideration of the medical evidence from the period after the first decision.  (*Id.* at 1035-40.)  The ALJ focused on Crawley's medical records from 2018-2024, and balanced Crawley's new hearing testimony against the new medical evidence.  (*Id.*)  The ALJ found despite Crawley's complaints of back and knee pain, on examination from 2018 until March 2024, he regularly presented with full extremity motor strength, intact sensation, negative back tenderness, full musculoskeletal range of motion, and normal gait.  (*Id.* at 1037 (citing *id.* at 500-01, 991, 996, 1360, 1783-84, 3124).)  As to Crawley's cardiovascular complaints, during the new application period, he routinely presented with no symptoms of chest tightness, shortness of breath, leg swelling, or chest pain and had normal cardiovascular exam findings.  (*Id.* (citing *id.* at 1359, 1360, 1411).)

Crawley's argument that the ALJ erred by relying on prior administrative medical findings that adopted the prior ALJ's RFC under *Drummond* is not persuasive.  The ALJ explained those prior findings were persuasive to her because the limitations were supported by

the evidence relied upon and were consistent with the current medical evidence. (*Id.* at 1038-40.) For instance, the ALJ found the state agency medical consultants' assessments were persuasive because "the objective records routinely note a steady/normal gait with no secondary end-organ damage." (*Id.* at 1038.) As to the state agency psychologists' findings, the ALJ noted which assessments were persuasive based on the medical evidence relied on and where they were inconsistent with the medical evidence. (*Id.* at 1039-40.) The ALJ measured the prior administrative findings against the new medical evidence. Even if the reviewing medical sources considered themselves bound by the previous ALJ's determinations and even if it was error for them to do so, such error did not extend to the ALJ. *See Dennis D.*, 2024 WL 1193662, at *7-8; *Gooden*, 2024 WL 2830817, at *5-6.

Here, the ALJ's decision demonstrates she considered the new and material medical evidence for the new application period and gave Crawley's current applications a "fresh review." *Earley*, 893 F.3d at 934. In focusing on the updated medical evidence and considering new datapoints, including Crawley's stroke, the ALJ found Crawley was disabled as of March 14, 2024. The ALJ's findings are supported by substantial evidence. *Kyle*, 609 F.3d at 854. Crawley's first objection is OVERRULED.

    **C.**    **Second Objection: The R&R's Finding That the ALJ Correctly Found That Plaintiff Did Not Need A Cane To Ambulate Was Factually And Legally Incorrect**

Social Security Ruling 96-9p dictates when an assistive device is medically required and must be included in the RFC. It provides:

> **Medically required hand-held assistive device:** To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case . . . .

SSR 96-9p, 1996 WL 374185, at *7, 1996 SSR LEXIS 6 (July 2, 1996).

"SSR 96-9p essentially contains two requirements before an ALJ may conclude that a hand-held assistive device is medically required." *Barnes v. Comm'r of Soc. Sec.*, No. 21-CV-01688, 2023 WL 2988346, at *7, 2023 U.S. Dist. LEXIS 69450 (N.D. Ohio Mar. 22, 2023) (quotations and citations omitted). "First, there must be medical documentation establishing the need for said device to aid in walking/standing." *Id.* (quotations and citations omitted). "Second, the medical records must also describ[e] the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information." *Id.* (quotations and citations omitted). "[D]ocumentation describing the circumstances for which [the assistive device] is needed is critical to establishing that it qualifies as a necessary device under SSR 96-9p." *Id.* (quotations and citations omitted) (collecting cases). If an assistive device is "not a necessary device for [a] claimant's use, it cannot be considered an exertional limitation that reduce[s] [the claimant's] ability to work." *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002).

Crawley argues the ALJ erroneously failed to include Crawley's need for a cane in her RFC. (Doc. 12 at 3228.) To Crawley, this was harmful error because the use of a cane would preclude all work. (*Id.* at 3229.) Crawley points to Dr. Belding's opinion that a cane was needed for pain and weakness, Crawley's testimony that he used a cane, and medical records noting Crawley was using a cane. (*Id.* at 3228.)

Beginning with Dr. Belding's opinion, the Court finds it does not meet the requirements of SSR 96-9p. In his Physical Medical Source Statement, Dr. Belding checked "Yes" for whether Crawley must use a cane or assistive device. (Doc. 6 at 985.) He checked "Pain" and "Weakness" for the symptoms requiring a cane. (*Id.*) In response to whether Crawley needed a

cane "for walking, standing, or both," Dr. Belding responded "yes." (*Id.*)  As to whether Crawley needed a cane "all of the time," he responded "no." (*Id.*)  But these checked boxes and "yes/no" responses, without more, do not sufficiently document the circumstances in which Crawley required a cane, i.e., whether he required one at all times, during all activities, and on all terrains.  *Barnes*, 2023 WL 2988346, at *8 (claimant "failed to identify any records describing the precise circumstances in which an assistive device was medically necessary and has thus not met the requirements of SSR 96-9p"); *see also Willis v. Comm'r of Soc. Sec.*, No. 24-CV-01503, 2025 WL 2055270, at *24, 2025 U.S. Dist. LEXIS 140516 (N.D. Ohio July 23, 2025), *R&R adopted*, 2025 WL 2402706, 2025 U.S. Dist. LEXIS 160381 (N.D. Ohio Aug. 19, 2025) (claimant failed to meet SSR 96-9p by failing to provide an unambiguous opinion stating the circumstances in which the assistive device was medically necessary).  The ALJ ultimately found Dr. Belding's opinion was "not persuasive because the restrictions were unsupported by the medical evidence relied upon . . . [and] [t]he limitations were also excessive and inconsistent with the medical evidence, such as the claimant's presentation with normal gait, normal balance, and full motor strength during treatment." (Doc. 6 at 1038 (citing *id.* at 3124).)

      Finally, Crawley's testimony about needing a cane and that other medical records noted he was using a cane do not change the result.  "[A] claimant's testimony does not qualify as medical documentation establishing the need for a cane under SSR 96-9p." *Barnes*, 2023 WL 2988346, at *8 (quotations and citations omitted).  And notations in medical records and treatment notes about a claimant's use of an assistive device does not establish such a device was medically necessary under SSR 96-9p. *Id.* (collecting cases).  Crawley has not demonstrated a cane was medically necessary.  The ALJ's determination to exclude a cane from the RFC was

supported by substantial evidence. *Kyle*, 609 F.3d at 854. Crawley's second objection is OVERRULED.

### III. CONCLUSION

For the reasons stated herein, Plaintiff Paul E. Crawley, Jr.'s objections are OVERRULED, the R&R is ACCEPTED and ADOPTED, and the final decision of the Commissioner of Social Security is AFFIRMED.

**IT IS SO ORDERED.**

**Date:** December 29, 2025

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE